**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| In re: Jennifer M. Lennemann, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Case No. BK 24-40046-BSK |

**CHAPTER 11 PLAN OF REORGANIZATON OF JENNIFER M. LENNEMANN**

COMES NOW, Jennifer Lennemann, hereinafter referred to as "Debtor", proposes the following Chapter 11 Plan of Reorganization (the "Plan").

**ARTICLE I - (DEFINITIONS)**

A.  **DEFINED TERMS**

Subject to the qualifications contained in Article I, Paragraph B below, the following terms are defined as follows whenever they appear as capitalized terms and are used in this Plan and Debtor's Disclosure Statement, if applicable.  For purposes of the Plan and such defined terms, the singular and plural uses of such defined terms and the conjunctive and disjunctive uses thereof will be fungible and interchangeable (unless the context otherwise requires); and the defined terms will include masculine, feminine, and neuter genders.  Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.  "Administrative Claim" shall mean a Claim to the extent allocated to such Debtor for costs and expenses of administration pursuant to section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code and claims entitled to priority under sections 364, 365(d)(3) and 507(b) of the Bankruptcy Code, and includes:  (i) actual and necessary costs and expenses incurred by the Debtor after the Petition Date with respect to preserving the Estates and operating the Debtor's business; (ii) any Professional Fee Claims approved by the Bankruptcy Court under section 330 of the Bankruptcy Code that are incurred on or before the Confirmation Date; and (iii) all fees and charges properly assessed against the Estates under 28 U.S.C. § 1930.

2.  "Allowed Amount" shall mean the amount of any Allowed Claim recognized by Debtor as valid or allowed by a Final Order of this Court.

3.  "Allowed Claim" or "Allowed…Claim" or "Allowed Interest" shall mean a Claim or Interest having the following characteristics:

a)  Either such Claim or Interest was listed in the Chapter 11 Schedules of Debtor filed with the United States Bankruptcy Court for the District of Nebraska (hereafter, the "Court") pursuant to §521 of the Code; and (1) such Claim or Interest was not identified in those schedules as "disputed", "contingent" or "unliquidated"; or (2) proof of such Claim or Interest has been filed with the Court in the time and in the manner prescribed by the Court, the Code and the Federal Rules of Bankruptcy Procedure; and

b)  No objection to the allowance of such Claim or Interest has been interposed within the periods of limitation fixed by the Court, the Code or the Federal Rules of Bankruptcy Procedure or any order resolving any objection to the allowance of such Claim or Interest has become a Final Order.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

4. "Avoidance Action" shall mean a claim or cause of action, and the proceeds thereof, against Persons arising under sections 502(d), 542, 544, 545, 547 through 551, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer and fraudulent conveyance laws, whether or not litigation is commenced before or after the Effective Date to prosecute such Avoidance Action.

5. "Ballot" shall mean each of the forms that will be distributed with the Plan to holders of Claims and holders of Interests in Classes that are impaired under the Plan and entitled to vote in connection with the solicitation of acceptances of the Plan.

6. "Bankruptcy Code" or "Code" shall mean the federal statutes commonly referred to as the "Bankruptcy Code" and which are set forth in Title 11 of the United States Code (11 U.S.C. § 101, *et seq.*).

7. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Nebraska or the United States District Court, District of Nebraska, if and when a district judge is acting as a trial judge and not an appellate judge in this Case.

8. "Bankruptcy Schedules" shall mean the official schedules of assets and liabilities and statement of financial affairs filed by Debtor in this case.

9. "Business Day" shall mean Monday through Friday, except for state and federal holidays.

10. "Case" shall mean the Chapter 11 bankruptcy case of Debtor, pending in the United States Bankruptcy Court for the District of Nebraska as Case No. BK 22-80866.

11. "Cash" shall mean legal tender of the United States of America and equivalents thereof.

12. "Causes of Action" shall mean all claims and causes of action of the Debtor and its Estate as of the Effective Date, whether arising under any contract, tort, the Bankruptcy Code, or other federal or state law, including, but not limited to, Avoidance Actions, Insurance Claim Litigations, all litigation pending in any jurisdiction in which any of the Debtor is a plaintiff, together with all products and proceeds thereof.

13. "Causes of Action Recoveries" shall mean the proceeds recovered from Causes of Action, less the cost of collection thereof; provided, however, that Cause of Action Recoveries shall not include Insurance Claim Recoveries.

14. "Claim" shall mean a "claim," as defined by §101(5) of the Code, against Debtor, against property of Debtor or against property of the Estate.

15. "Class" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to this Plan.

16. "Confirmation" shall mean the signing, by a United States Bankruptcy Judge or United States District Judge acting as a trial judge and not as an appellate judge, of all orders necessary to confirm the Plan.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

17. "Confirmation Order" shall mean the order (or orders) confirming the Plan, signed by a United States Bankruptcy Judge or United States District Judge, acting as a trial judge and not as an appellate judge, after entry of such order (or orders) on the court's docket.

18. "Creditor" shall mean any entity holding a Claim.

19. "Cure Amount" shall mean the amount necessary to cure any payment arrearages with respect to any executory contracts and leases to be assumed by Debtor.

20. "Disputed Claim" or "Disputed Interest" shall mean, at any time, that portion of a Claim asserted against Debtor that is: (i) the subject of an objection interposed by Debtor or other party in interest in the Chapter 11 Case, if prior to the first hearing on the Confirmation Order such objection remains unresolved; or (ii) prior to the time that an objection has been or may be timely filed, in excess of the amount of the Claim scheduled by Debtor as other than disputed, contingent or unliquidated; provided, however, that the Bankruptcy Court may estimate a Disputed Claim for purposes of allowance pursuant to §502(c) of the Bankruptcy Code. In the event there is a dispute as to classification of a Claim, it shall be considered a Disputed Claim in its entirety. The portion of a Claim that is not disputed by Debtor shall be deemed to be an Allowed Claim.

21. "Effective Date" shall mean that date which is fourteen (14) days following the date of all orders necessary for confirmation of the Plan to become Final Orders.

22. "Estate" shall mean the estate created in Debtor's Case under §541 of the Bankruptcy Code.

23. "Equity Holder" shall mean any holder of an Interest.

24. "Executory Contract" shall mean a contract or lease to which one or more of the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

25. "Federal Rules of Bankruptcy Procedure" shall mean those rules of procedure governing bankruptcy cases and contested matters and adversary proceedings in those cases which have been promulgated pursuant to 28 U.S.C. § 2075, and any amendments to those rules applicable to this Case.

26. "Final Order" shall mean an order or judgment entered on the Court's official docket and which: (a) has sufficient finality under applicable law to be appealable as of right; (b) has been entered on the court's docket for a sufficient period of time such that the filing of any notice of appeal from it is subject to being dismissed as commencing an untimely appeal; (c) has not been reversed; (d) is not stayed; (e) is not the subject of a pending motion seeking relief from it, reconsideration of it, or to alter or amend it; and (f) is not the subject of a pending appeal or a pending motion for review or rehearing on appeal.

27. "Interest" shall mean the interests, whether or not asserted, of any holder of an equity security of Debtor on the Petition Date, as defined in §101(17) of the Bankruptcy Code.

28. "Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

29. "Person" shall mean an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

Case 24-40046-BSK    Doc 41    Filed 09/03/24    Entered 09/03/24 12:41:59    Desc Main
Document    Page 4 of 19

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

30. "Petition" shall mean the petition for relief under Chapter 11 of Title 11, United States Code filed by Debtor on November 21, 2022.

31. "Petition Date" shall mean the date upon which Debtor filed its voluntary petition for relief under Chapter 11 of Title 11, United States Code.

32. "Plan" shall mean this Chapter 11 Plan of Reorganization, including all exhibits to this Plan, either in their present form or as they may be altered, amended or modified from time to time in accordance with the provisions of this Plan, the Code and the Federal Rules of Bankruptcy Procedure.

33. "Priority Claim" shall mean a Claim entitled to priority against the Estate under §507(a), except for those Claims arising under §507(a)(8). Priority Claims do not include any Claims incurred after the Petition Date.

34. "Unsecured Claim" means a Claim not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Cod

35. "Priority Tax Claim" shall mean a Claim entitled to priority against the Estate under §507(a)(8). Priority Tax Claims do not include any Claims incurred after the Petition Date.

36. "Pro Rata" shall mean, as of any date of determination, with respect to the share of any Allowed Claim within any Class of Claims, the proportion ("Z") that the Face Amount of such Allowed Claim in a particular Class of Claims ("X") bears to the aggregate Face Amount of all Allowed Claims (including Disputed Claims) in such Class ("Y") represented by the mathematical algorithm of: $X \div Y = Z$.

37. "Professional Fee Claim" shall mean a Claim of a Professional Person for compensation for services rendered in these Cases prior to the Effective Date under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code, for such Professional Person.

38. "Professional" or "Professional Persons" shall mean Persons, including attorneys, accountants and financial advisors retained by the Debtor, the Committee or the Creditor Trustee, or to be compensated under sections 327, 328, 330, 331, 363, 503 or 1103 of the Bankruptcy Code.

39. "Reorganized Debtor" shall mean Debtor, as reorganized, which shall continue to own the property interests of Debtor on the Effective Date and having the rights, powers, duties and interests granted to the "Reorganized Debtor" under the Plan and the Bankruptcy Code.

40. "Schedules" shall mean Debtor's Chapter 11 Schedules and Statement of Financial Affairs filed with the Clerk of the Bankruptcy Court in this Case and any subsequently filed amendments thereto at Filing No. 82.

41. "Secured Claim" means a Claim secured by a lien on property of the Estates, or a Claim subject to set off under section 553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in property of the Estates, or to the extent of the amount subject to set off, as the case may be.

42. "Secured Creditor" shall mean the holder of a Secured Claim.

43. "Security Interest" shall have the meaning set forth in section 101(51) of the Bankruptcy Code.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

44. "Tax" shall mean: (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

45. "Unsecured Claim" means a Claim not secured by a Lien on property of the Estates and not entitled to be classified as a Priority Claim under section 507 of the Bankruptcy Code.

46. "Unsecured Creditor" shall mean any holder of an Allowed Unsecured Claim.

**B.     RULES OF CONSTRUCTION**

1. The rules of construction set forth in §102 of the Bankruptcy Code apply to this Plan.

2. Bankruptcy Rule 9006(a) applies when computing any time period under this Plan.

3. For the purpose of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined in Article I, Paragraph A above, shall have the meanings assigned to them under the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

4. The definition given to any term or provision in this Plan shall supersede and control any different definition that may be given to such terms or provisions in Debtor's Disclosure Statement, if applicable.

5. Whenever the context requires, terms contained and defined herein shall include the plural and the singular number. The masculine gender as used in the Plan shall, unless the context otherwise requires, include the feminine gender, and the feminine gender shall likewise include the masculine.

6. Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7. Unless otherwise indicated, the phrase "under the Plan", "hereunder", "herein", "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan. Unless otherwise specified, all references to "Articles" or "Paragraphs" are references to this Plan's Articles or Paragraphs.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

## ARTICLE II - (DEFINITION AND TREATMENT OF CLAIMS)

A.  **SUMMARY OF CLASSIFICATION OF CLAIMS AND INTERESTS**

| CLASS | DESCRIPTION | IMPAIRED | VOTING STATUS |
|---|---|---|---|
| N/A | Allowed Administrative Claims, Priority Claims, and Priority Tax Claims | N/A | Not Entitled to Vote |
| Class 1 | Exchange Bank | Yes | Entitled To Vote |
| Class 2 | TD Bank | Yes | Entitled To Vote |
| Class 3 | Nelnet | Yes | Entitled To Vote |
| Class 4 | General Unsecured Claims | No | Not Entitled to Vote |
| Class 5 | Debtor's Property Interests | Yes | Entitled To Vote |

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM, AND NO DISTRIBUTION WILL BE MADE ON ANY CLAIM SUBORDINATED TO OTHER CLAIMS PURSUANT TO AN ORDER OF THE COURT, EXCEPT AS MAY BE CONSISTENT WITH SUCH SUBORDINATION.**

B.  **AMOUNTS OF CLAIMS AND INTERESTS**

Because certain of the Claims and Interests treated under this Plan are in unknown or undetermined amounts, the amounts of Claims and Interests specified in the Plan reflect only Debtor's best estimate as of the date hereof.

1.  Classification and Treatment of Claims and Interests Under the Plan

The treatment of Claims and Interest in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Allowed Interest may have in or against Debtor, the Estate, the Reorganized Debtor or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have in or against Debtor, the Estate, the Reorganized Debtor, or their respective property.  All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

a) *Unclassified Claims* – Under the Plan, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims, as of the Effective Date of the Plan constitute unclassified claims and shall be treated as set forth below:

(i) Allowed Administrative Claims and Allowed Priority Claims and Allowed Priority Tax Claims - The holders of Allowed Priority Claims and Allowed Administrative Claims against

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

Debtor (excluding claims described in 11 U.S.C. § 507(a)(8)) shall be paid in cash, in full, within five (5) business days of the Effective Date or upon the expiration of the appeal period for the order allowing such claims claim, whichever is later, or at such other times as may be mutually agreed upon by Debtor and such claimants.

      b)   *Classified Claims* - Under the Plan, Allowed Secured Claims, Allowed Unsecured Claims, Interests, any Allowed Claims subordinated under §§509(c), 510(b), or 510(c), and any Interest in Debtor or any Interest or Claim held by Debtor's Equity Holders constitute classified claims which are placed into the respective classes in the table set forth above.

    *Class 1*:   This Class shall consist of the Secured Claims of Exchange Bank ("Exchange"). Exchange filed an amended proof of Claim (the Exchange Proof of Claim)[1] in the Bankruptcy Case in the amount of $960,821.36 (the "POC Balance").  The Secured Claim of Exchange is secured by first position, prepetition deeds of trust filed against Debtor's Real Property, and the fixtures thereon.  The Secured Claim of Exchange shall be Allowed and treated as follows:

i) **Amount.**  The amount of the POC Balance owed to Exchange shall be determined and Allowed as set forth in the Exchange Proof of Claim less an amount equal to the principal payments made to Exchange by or on behalf of Debtor since the Petition Date.

ii) **Security.**  The Secured Claim of Exchange shall continue to be secured by the same real and personal property that secured it on the Petition Date and with the same priority it had on the Petition Date in relationship to the Claim of other Creditors, if any, asserting Secured Claim against any or all of the same assets.  Nothing herein shall constitute a release of or otherwise impact any liability of any guarantor of the debt relating to the Secured Claim of Exchange.

iii) **Payments and Term.**

    a.  Loan Note 25140747

        i. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Debtor and Exchange, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the Exchange Loan Documents (as defined below) associated with Loan 25140747 shall be deemed cured by this Plan and the same be reinstated on the Effective Date.  Beginning on the 1st day of the calendar month following the Effective Date, Debtor resume making monthly payments to Exchange on account of Loan 25140747 in the amount of $336.28 until Loan 25140747 matures, at which time any remaining amount due and outstanding shall be payable by Debtor. Interest shall continue to accrue on the unpaid principal balance owed to Exchange at the non-default contractual rate of interest described in the Exchange Loan Documents (as defined below).

    b.  Loan Note 25140746

        i. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Debtor and Exchange, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the Exchange Loan Documents (as defined below)

---

[1] Claims No. 1 in the Bankruptcy Case.

Case 24-40046-BSK    Doc 41    Filed 09/03/24    Entered 09/03/24 12:41:59    Desc Main
Document    Page 8 of 19

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

associated with Loan 25140746 shall be deemed cured by this Plan and the same be reinstated on the Effective Date. Beginning on the 1st day of the calendar month following the Effective Date, Debtor resume making monthly payments to Exchange on account of Loan 25140746 in the amount of $2,945.78 until Loan 25140746 matures, at which time any remaining amount due and outstanding shall be payable by Debtor. Interest shall continue to accrue on the unpaid principal balance owed to Exchange at the non-default contractual rate of interest described in the Exchange Loan Documents.

   c. Loan Note 25140591

      i. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Debtor and Exchange, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the Exchange Loan Documents (as defined below) associated with Loan 25140591 shall be deemed cured by this Plan and the same be reinstated on the Effective Date. Beginning on the 1st day of the calendar month following the Effective Date, Debtor resume making monthly payments to Exchange on account of Loan 25140591 in the amount of $817.60 until Loan 25140591 matures, at which time any remaining amount due and outstanding shall be payable by Debtor. Interest shall continue to accrue on the unpaid principal balance owed to Exchange at the non-default contractual rate of interest described in the Exchange Loan Documents.

   d. Loan Note 25131808

      i. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Debtor and Exchange, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the Exchange Loan Documents (as defined below) associated with Loan 25131808 shall be deemed cured by this Plan and the same be reinstated on the Effective Date. Beginning on the 1st day of the calendar month following the Effective Date, Debtor shall begin making payments to Exchange in an amount necessary to pay Loan 25131808 over a 240-month period with the entire unpaid balance due and payable 60 months after the Effective Date. Interest shall accrue on Loan 25131808 at a rate equal to the 20-year US Treasury bond rate plus 2%. For avoidance of doubt, Debtor shall begin making monthly payments to Exchange of principal plus accrued interest in the amount of $1,447.14.

   e. Loan Note 25139624

      i. Notwithstanding anything to the contrary, including anything in any prior agreements or forbearance agreements between Debtor and Exchange, and pursuant to 11 U.S.C. §1123(d), any and all defaults under the Exchange Loan Documents (as defined below) associated with Loan 25139624 shall be deemed cured by this Plan and the same be reinstated on the Effective Date. Beginning on the 1st day of the calendar month following the Effective Date, Debtor resume making monthly payments to Exchange on account of Loan 25139624 in the amount of $354.05 until Loan 25139624 matures, at which time any remaining amount due and outstanding shall be payable by Debtor. Interest shall continue to accrue on the unpaid principal balance owed to Exchange at the non-default contractual rate of interest described in the Exchange Loan Documents.

  iv) **Exchange Loan Documents.** The following Exchange Loan Documents, except as modified

Case 24-40046-BSK    Doc 41    Filed 09/03/24    Entered 09/03/24 12:41:59    Desc Main
Document    Page 9 of 19

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

in herein, shall remain in full force and effect.

  a. Promissory Note 25140747 dated March 1, 2022, in the principal amount of $50,000.00;
  b. Promissory Note 25140746 dated March 1, 2022, in the principal amount of $438,000.00;
  c. Promissory Note 25140591 dated January 25, 2022, in the principal amount of 126,500.00;
  d. Promissory Note 25131808 dated July 10, 2017, in the principal amount of $201,450.00;
  e. Promissory Note 25139624 dated May 26, 2021, in the principal amount of $50,000.00;
  f. Deed of Trust dated July 10, 2017, and filed for record on July 11, 2017, as instrument number 2017-04040 in the office of the Buffalo County Register of Deeds
  g. Deed of Trust dated May 26, 2021, and filed for record on June 1, 2021, as instrument number 2021-04164 in the office of the Buffalo County Register of Deeds;
  h. Deed of Trust dated March 1, 2022, and filed for record on March 3, 2022, as instrument number 2022-01360 in the office of the Buffalo County Register of Deeds;
  i. Deed of Trust dated May 26, 2021, and filed for record on May 27, 2021, as instrument number 2021-04081 in the office of the Buffalo County Register of Deeds;
  j. Deed of Trust dated September 8, 2021, and filed for record on September 9, 2021, as instrument number 2021-06758 in the office of the Buffalo County Register of Deeds; and
  k. Deed of Trust dated March 1, 2022, and filed for record on March 3, 2022, as Book 272 of Microfilm on Page 34-41 in the office of the Kearney County Register of Deeds

v) **Early Repayment**. Notwithstanding any other provision of this Plan, Debtor shall have the option to repay the POC Balance at any time without penalty.

vi) **Reporting.** Upon request, Debtor shall provide Exchange her latest annual financial statements within thirty (30) days of such request. In addition, Debtor, upon request, shall provide to Exchange such other financial information, including profit / loss statements, balance sheets, and tax returns, within thirty (30) days of such request

vii) **Default**. Upon any default by the Debtor of obligations owed to Exchange under this Plan, Exchange shall give notice to the Debtor of default and thereafter the Debtor shall have thirty (30) days from the date of the notice to cure the default, or such other default and cure period in the Exchange Loan Documents, whichever is longer. If Debtor fails to cure the default within said Cure Period, Exchange shall be entitled to relief from the Plan, any automatic stay, or any confirmation order and be entitled to enforce all rights and remedies available by law or in equity without further notice or hearing.

viii) **Section 506 Augment**. Nothing in this Plan shall prejudice or prevent Exchange from seeking to augment the allowed amount of its Claim pursuant to 11 U.S.C. §506 to include interest on such claim, and any reasonable fees, costs, or charges provided for under the Exchange Loan Documents or applicable non-bankruptcy law under which such claim arose.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

*Class 2*: This Class shall consist of the Secured Claim of TD Bank. The TD Bank filed a proof of Claim (the "TD Proof of Claim")[2] in the Bankruptcy Case in the amount of $28,745.28. The Secured Claim of TD Bank is secured by a first position lien on Debtor's personal vehicle. The Secured Claim of TD Bank shall be allowed and treated as follows:

i) **Amount.** The amount of the Claim owed to TD Bank shall be determined and Allowed as set forth in the TD Proof of Claim. Any amounts required to cure any prepetition default, currently believed to be $595.50, shall be paid to TD Bank on or before the Effective Date.

ii) **Security.** The Secured Claim of TD Bank shall continue to be secured by the same personal property that secured it on the Petition Date and with the same priority it had on the Petition Date in relationship to the Claim of other Creditors, if any, asserting Secured Claims against any or all of the same assets.

iii) **Payments and Term.** Notwithstanding anything to the contrary, and pursuant to 11 U.S.C. §1123(d), any and all defaults under applicable loan documents with TD Bank, including that certain *Retail Installment Sale Contract* dated on or about January 8, 2022 (the "Finance Agreement"), shall be deemed cured by this Plan and the Finance Agreement shall be reinstated on the Effective Date. Debtor will continue to make regular monthly payments to TD Bank according to, and as called for in, the terms of the Finance Agreement, which shall remain in effect, until such time as the Secured Claim of TD Bank is paid in full.

iv) **Default**. Upon any default by the Debtor of obligations owed to TD Bank under this Plan, TD Bank shall give notice to the Debtor of default and thereafter the Debtor shall have thirty (30) days from the date of the notice to cure the default, or such other default and cure period in the Finance Agreement, whichever is longer. If Debtor fails to cure the default within said Cure Period, TD Bank shall be entitled to relief from the Plan, any automatic stay, or any confirmation order and be entitled to enforce all rights and remedies available by law or in equity without further notice or hearing.

v) **Section 506 Augment**. Nothing in this Plan shall prejudice or prevent TD Bank from seeking to augment the allowed amount of its Claim pursuant to 11 U.S.C. §506 to include interest on such claim, and any reasonable fees, costs, or charges provided for under the Finance Agreement or applicable non-bankruptcy law under which such claim arose.

*Class 3*: This Class shall consist of the Unsecured Claim of US Department of Education c/o Nelnet ("Nelnet"). Nelnet filed a Proof of Claim (the Nelnet Proof of Claim)[3] in the Bankruptcy Case in the amount of $12,902.51. The Unsecured Claim of Nelnet shall be allowed and treated as follows:

i) **Amount.** The amount of the Claim owed to Nelnet Bank shall be determined and Allowed as set forth in the Nelnet Proof of Claim. Any amounts required to cure any prepetition default, currently believed to be $0.00, shall be paid to Nelnet on or before the Effective Date.

ii) **Payments and Term.** Notwithstanding anything to the contrary, and pursuant to 11 U.S.C. §1123(d), any and all defaults under applicable loan documents with Nelnet shall be deemed cured by this Plan and shall be reinstated on the Effective Date. Debtor will continue to make

---

[2] Claims No. 2 in the Bankruptcy Case.
[3] Claims No. 3 in the Bankruptcy Case.

Case 24-40046-BSK    Doc 41    Filed 09/03/24    Entered 09/03/24 12:41:59    Desc Main
Document      Page 11 of 19

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

regular monthly payments to Nelnet according to, and as called for in, the terms of the prepetition agreement with Nelnet until such time as the Secured Claim of Nelnet is paid in full.

*Class 4*:  This Class shall consist of the holders of Allowed Unsecured Claims not entitled to priority under the Code.  Each holder of an Allowed Claim in Class 4 will be paid in full plus interest over a 24-month period at the federal judgement rate beginning 30 days after the of the Effective Date.  Notwithstanding any other provision of this Plan, Debtor shall have the option to repay or prepay any Class 4 Claim at any time without penalty.

*Class 5*:  In exchange for payments and contributions described herein, Debtor shall be entitled to retain all assets of the bankruptcy estate.

**C.    IDENTIFICATION OF CLASSES IMPAIRED BY THE PLAN**

Only Classes 1,2,3 and 5 are entitled to vote for or against the Plan.  This means, in part, that the Plan modifies the contractual rights of holders of the claims and interests in each of those Classes, that such holders will not receive the Allowed Amounts of their Claims in cash on the Effective Date of the Plan or not be paid in accordance with the terms of the instruments giving rise to their respective claims, and that holders of Allowed Interests will not retain any fixed liquidation preference or be paid any fixed redemption amount for any Interest or equity securities held.  Holders of Class 4 Claims are unimpaired under this Plan and statutorily deemed to have accepted the Plan.  Notwithstanding the actual rejection by any Class or Classes, Debtor reserve the right to seek confirmation of the Plan in accordance with §1129(b) of the Bankruptcy Code.

**D.    MEANS OF IMPLEMENTING THE PLAN**

1. **General Treatment.**  Classes One through Four will be paid from the revenue derived from Debtor's post-petition income and operations.  Payments made to the holders of Allowed Claims shall be paid directly from Debtor.

2. **Distributions.**  Subject to the Bankruptcy Rules, all distributions made or required, under the Plan, shall be made: (i) if a proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address of such holder set forth in the relevant proof of claim, as such address may have been updated pursuant to the Bankruptcy Rule 2002(g); or (ii) if no proof of claim is filed in respect to a particular Claim, to the holder of such Allowed Claim at the address set forth in the relevant Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).  However, if Debtor is notified in writing, no later than ten (10) Business Days after the Effective Date, of a change of address that provides an address different from that specified in (i) or (ii) above, then the distribution shall be made at the address contained in the written notification.  Nothing contained in the Plan will require Debtor to attempt to locate any holder of an Allowed Claim.

3. **Resolution of Disputed Claims**.  Debtor shall file and serve a copy of each Objection upon the holder of the relevant Claim as soon as practicable, but in no event later than (i) 90 days after the Effective Date, or (ii) such other time as may be fixed or extended by the order of the Bankruptcy Court.  After the Effective Date, Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  No distribution or payment shall be made on account of a Disputed Claim unless, and until, such Disputed Claim becomes an Allowed Claim.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

4. **Estimation of Disputed Claims**. Debtor may at any time request that the Bankruptcy Court estimate any such Disputed Claim subject to estimation under §502(c) of the Bankruptcy Code and for which Debtor may be liable under this Plan, including any Disputed Claim for taxes, to the extent permitted by §502(c) of the Bankruptcy Code, regardless of whether any party in interest previously objected to such Claim; and the Bankruptcy Court may retain jurisdiction to estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code at any time during litigation concerning any objection to the Claim or Interest. In the event that the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount will constitute (at the option of Debtor to be exercised at the commencement of the estimation proceeding) either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.

5. **Unclaimed or Undeliverable Distributions**. Any distributions under the Plan with respect to an Allowed Claim that are unclaimed or undeliverable for a period of sixty (60) days after the applicable distribution date thereof shall be classified as "Unclaimed Property." Any distributions made under the Plan that become Unclaimed Property shall be returned to Debtor for disbursement in accordance with the terms of this Plan.

6. **Ordinary Course of Business.** Nothing herein or the Confirmation Order shall in any way limit Debtor's ability to operate in the ordinary course of business, or to take any steps reasonably necessary, in Debtor's business judgment, to protect and maintain the financial stability of Debtor's business operation, or the health, wellbeing, or condition of Debtor's assets, whether existing now or in the future.

7. **Further Authorizations.** Debtor, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, the Plan.

8. **Transfer Taxes.** The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to or in connection with the Plan, or the making or delivery of an instrument of transfer under or in connection with the Plan shall not, pursuant to §1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

9. **Recordable Order.** Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

10. **Effectuating Documents and Further Transactions.** Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

## ARTICLE III - (TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES)

In accordance with 11 U.S.C. § 365, the Debtor intends to assume any of its all its executory contracts and unexpired leases. Unless already specifically assumed by the terms of this Plan, the Debtor shall have until the Effective Date of the Plan to file an application to assume or reject any executory contract that has not been previously assumed or rejected. To the extent the Debtor fails to obtain approval to assume any executor contract it shall be deemed to be rejected as of the Effective Date.

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

Notwithstanding any contract provision, lease provision, or applicable non-bankruptcy law to the contrary, Debtor reserves the right to assign any assumed executory contract or unexpired lease in accordance with the Bankruptcy Code, provided, however, Debtor shall first cure any arrearages in the performance of said assumed or assigned executory contract or unexpired lease.

As soon as practicable, Debtor will file a notice of cure amount (the "Cure Notice") with the Court and serve the Cure Notice on all non-debtor parties to any executory contracts and unexpired leases (the "Contract Notice Parties") with Debtor that Debtor determines, in its business judgment, are necessary to maximize the value of the Estate. The Cure Notice shall state the cure amount that Debtor believes is necessary to assume a specific executory contract and/or unexpired lease pursuant to §365 of the Bankruptcy Code (the "Cure Amount") and notify the Contract Notice Party that such party's contract or lease may be assumed and assigned to a purchaser of the assets to be identified at the conclusion of the auction.

If Debtor believes that there is no Cure Amount due, the Cure Notice shall clearly state as such. The Cure Notice shall set a deadline by which the non-debtor counter party shall file an objection to the proposed Cure Amount. Debtor will request that the Court set the deadline to object to any Cure Amount ten (10) days after service of the Cure Notice so as to be received by mail or email no later than 5:00 p.m. (Central time) on such day by Counsel to Debtor: (i) Patrick Turner, Turner Legal Group, LLC, 139 S. 144th Street, Suite 665, Omaha, Nebraska 68010, pturner@turnerlegalomaha.com.

Unless a Contract Notice Party files an objection to the Cure Amount by the objection deadline, such Contract Notice Party shall be: (i) forever barred from objecting to the Cure Amount; and (ii) forever barred and estopped from asserting or claiming against Debtor or any other assignee of the relevant contract that any additional amounts are due or defaults exist, or that conditions to assumption and assignment must be satisfied under such contract or lease.

All timely objections to any Cure Amount must set forth: (i) the basis for the objection; (ii) the exact amount the objector asserts as the correct Cure Amount; and (iii) sufficient documentation to support the allegedly correct Cure Amount.

In the event an executory contract or unexpired lease is rejected by Debtor, any Person seeking a claim for damages by reason of the rejection of any executory contract or unexpired lease must file a proof of claim with the Bankruptcy Court before forty-five (45) calendar days following the Effective Date. Such claim for damages shall be treated as a Class 2 Unsecured Claim. **Any person who fails to file a proof of claim prior to this bar date is forever barred from asserting any such claim against Debtor, Bankruptcy Estate and/or the Reorganized Debtor and will receive nothing under this Plan.**

## ARTICLE IV - (POST-CONFIRMATION BUSINESS OPERATIONS)

After the Effective Date, Debtor will continue to manage the business affairs of the Debtor without supervision by the Bankruptcy Court, and may enter into agreements to transfer, convey, encumber, use and lease any and all of its remaining assets or assets acquired hereafter.

## ARTICLE V - (OWNERSHIP OF DEBTOR'S ASSETS)

As of the Effective Date of the Plan, the Reorganized Debtor shall be vested with ownership of all property of the Debtor's Chapter 11 Estate, as defined in 11 U.S.C. §541, and as provided for in the Plan. Upon such transfer, and pursuant to 11 U.S.C. §1141, the Reorganized Debtor shall own all such property

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

free and clear of all liens, claims and interests of any person or entity, except as specifically provided in the Plan or the Order Confirming the Plan.

## ARTICLE VI - (INSURANCE)

The Reorganized Debtor shall maintain insurance on its tangible personal and real property, if any, in an amount not less than the fair market value of that property and shall keep its property in good repair, reasonable wear and tear excepted.

## ARTICLE VII - (ACCEPTANCE OR REJECTION OF PLAN)

Only Classes 1, 2, 3 and 5 are entitled to vote for or against the Plan. Holders of Class 2-4 Claims are unimpaired under this Plan and statutorily deemed to have accepted the Plan. Notwithstanding the actual rejection by any Class or Classes, Debtor reserve the right to seek confirmation of the Plan in accordance with §1129(b) of the Bankruptcy Code.

## ARTICLE VIII - (BINDING NATURE OF THE PLAN)

Upon the entry of the Order Confirming the Plan, the Plan shall bind Debtor, the Reorganized Debtor, all entities that are to acquire any property under the Plan, all creditors, and all equity security holders, whether or not their claims and interests are impaired under the Plan and whether or not they have accepted the Plan, as determined by 11 U.S.C. §1141. Certain other claims shall be deemed released and other acts and actions as further specified in the Plan shall be enjoined.

This means, in part, that, except as provided by an express order of the Bankruptcy Court or pursuant to the terms of the Plan or the Order Confirming the Plan, all judicial, administrative or other actions or proceedings pending against Debtor or arising out of claims accrued prior to the confirmation of the Plan shall be permanently enjoined.

## ARTICLE IX - (INJUNCTION AND DISCHARGE)

**A.**     **Termination of Stay and Discharge**

The automatic stay imposed by 11 U.S.C. § 362(a) shall terminate when the Order Confirming the Plan becomes non-appealable. Except as otherwise provided herein or in the Confirmation Order, the rights afforded in this Plan and the payments and distributions to be made hereunder shall discharge and release all existing debts and Claims, and terminate all Interests, of any kind, nature or description whatsoever against or in the Debtor, the Reorganized Debtor, or any of their assets or properties. Except as provided in this Plan, upon the Effective Date, all Claims against and Interests in the Debtor, regardless of whether or not (1) a proof of Claim or Interest has been filed or is or was deemed filed, (2) such Claim or Interest was listed on any of the Debtor's Schedules, (3) such Claim or Interest was Allowed, or (4) the holder of such Claim or Interest has voted to accept or reject this Plan, shall be, and shall be deemed to be, discharged, released and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Debtor, Reorganized Debtor, the or any of Debtor's or Reorganized Debtor's assets or properties, any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim or Proof of Interest. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to 11 U.S.C. §524, from prosecuting or asserting any such discharged Claim against Reorganized Debtor or terminated Interest in Reorganized Debtor. Furthermore, any person who has

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

contractually agreed to release any Claims against the Debtor and any liens or interests in any Collateral shall be deemed to have released any such Claims and liens or interests in any such Collateral upon entry of the Confirmation Order. Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

Pursuant to Section 1141(a) of the Bankruptcy Code, upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

**B.    Injunction**

Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan, including without limitation from taking any of the following actions against, as applicable, the Debtor or Reorganized Debtor: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims and Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such entities on account of or in connection with or with respect to any such Claims and Interests; (3) creating, perfecting, enforcing, renewing, extending, reviving, or continuing any Lien or encumbrance of any kind against such entities or the property of such entities on account of or in connection with or with respect to any such Claims and Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such entities or against the property of such entities on account of or in connection with or with respect to any such Claims and Interests unless such entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims and Interests.

## ARTICLE X - (EXONERATION AND RELIANCE)

Debtor, as well as its respective members, officers, attorneys, accountants and other professionals whose employment has been approved by the Bankruptcy Court shall not be liable, other than for willful misconduct or gross negligence, to any holder of a Claim or Interest, or any other entity, with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken at any time between the Petition Date and the Effective Date of the Plan in connection with: (i) the management or operation of Debtor, or the discharge of their duties under the Bankruptcy Code; (ii) the implementation of any of the transactions provided for, or contemplated in, the Plan; (iii) any action taken in connection with either the enforcement of Debtor's rights against any entities or the defense of Claims asserted against Debtor with regard to the Chapter 11 Case; or (iv) any action taken in the negotiation, formulation, development, proposal, disclosure, Confirmation, or implementation of the Plan filed in this Chapter 11 Case. Debtor, as well as its respective Equity Holders, directors, officers, agents, employees, members, attorneys, accountants, financial advisors, and representatives may reasonably rely upon the opinions of their respective counsel, accountants, and other experts or professionals and such reliance, if reasonable, shall

Case 24-40046-BSK    Doc 41    Filed 09/03/24    Entered 09/03/24 12:41:59    Desc Main
                              Document         Page 16 of 19

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

conclusively establish good faith and the absence of willful misconduct; provided, however, that a determination that such reliance is unreasonable shall not, by itself, constitute a determination or finding of bad faith or willful misconduct.

### ARTICLE XI - (MISCALLANEOUS IMPLEMENTATION OF THE PLAN)

The Plan will be implemented, in part, as follows:

1. On the Effective Date, Debtor shall continue to operate in the ordinary course of business.

2. The members or managers shall oversee implementation of the Plan and be fully empowered to act for the estate to implement the Plan.

3. The assets of Debtor prior to the time of confirmation shall be all of the assets set forth in the Schedules and any assets acquired by Debtor after the Petition Date.

4. The members or managers of Debtor shall take the necessary actions to prosecute any and all claims, causes of action and objections to Proofs of Claim or Proofs of Interest as determined to be appropriate and in the best interest of Debtor and the persons holding Allowed Claims.

5. The membership agreements of Debtor shall be deemed to be amended in every way necessary to comply with and effectuate the terms and conditions of the Plan.

6. The members or managers of Debtor shall have all of the powers granted by Nebraska law, and any other applicable state or federal laws.

    a. The members or managers of Debtor shall have the power to amend the Membership Agreements in any manner necessary to carry out the provisions of the Plan. The members or managers shall be entitled to use and exercise all pertinent provisions of state and federal law.

### ARTICLE XII - (MODIFICATION OF AND AMENDMENTS TO THIS PLAN)

Prior to the entry of the Order Confirming this Plan, Debtor may propose amendments or modifications in accordance with 11 U.S.C. §1127. The Bankruptcy Court may, at any time, so long as it does not materially or adversely affect the interests of creditors and equity interest holders, remedy defects and omissions or reconcile any inconsistencies herein or in the Order Confirming the Plan as may be appropriate to effectuate this Plan.

### ARTICLE XIII - (REMEDIES FOR DEFAULTS BY THE REORGANIZED DEBTOR)

If the Reorganized Debtor fails to comply with the terms hereof, subject to any applicable notice requirements, the holders of Claims and Interests materially harmed thereby may proceed against the Reorganized Debtor and its property to enforce this Plan, taking any action permissible under federal or state law, in any court of competent jurisdiction.

### ARTICLE XIV - (RETENTION OF BANKRUPTCY COURT JURISDICTION)

Following confirmation of the Plan, the Bankruptcy Court shall retain, without limitation, jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

of the foregoing, the Bankruptcy Court will retain jurisdiction, until the Plan is fully consummated, for the following purposes:

     1. Deciding the proper classification of any claim, determining the proper allowance subordination and liquidation for purposes of distribution of claims estimated for purposes of voting, and resolving objections to claims and Interests, and the reexamination of Allowed Claims for purposes of determining acceptances at the time of Confirmation, and the determination of such objections as may be filed. The failure by the Reorganized Debtor to object to or to examine any Claim for the purpose of determining Plan acceptance, shall not be deemed to be a waiver of any right to object to or reexamine any Claim in whole or in part;

     2. Resolving all disputes regarding title to assets of the Reorganized Debtor and all disputes arising under the Bankruptcy Code and to determine all questions and disputes regarding assets of the Estate and all assets of the Reorganized Debtor existing as of the date of the Final Confirmation Order, to conduct any sales of assets of the Estate and assets of the Reorganized Debtor existing as of the date of the Final Confirmation Order, and all causes of action, controversies, disputes, or conflicts, known or unknown, whether or not subject to action pending as of the Confirmation Date, between a Debtor and any other party, including but not limited to, such Debtor's right to recover assets, avoid transfers, recover fraudulent transfers, offset claims, recover money or property from any party or return assets which were or are the property of the Estate or asset of the Reorganized Debtor existing as of the date of the Final Confirmation Order pursuant to the provisions of the Bankruptcy Code;

     3. Hearing all matters and deciding all issues regarding the prosecution by Debtor or the Reorganized Debtor of any Complaints or causes of action and preference claims against any person and adjudicate all claims, controversies, contested matters or adversary proceedings arising out of any purchases, sales, agreements or obligations made or undertaken by and between a Debtor and any third party during the pendency of the Reorganization Cases and such jurisdiction shall continue after the closing of these cases;

     4. Correcting of any defect, curing any omission, or reconciling any inconsistency between the Plan and the Order Confirming the Plan as may be appropriate to effectuate the purposes and intent of the Plan;

     5. Modifying the Plan after confirmation;

     6. Enforcing and interpreting the terms and conditions of the Plan, any securities issued under the Plan, or any other documentation effectuating the Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation or consummation of the Plan;

     7. Resolve any claims or causes of action, including any avoidance actions arising by operation of U.S.C. §§ 542 through 551, against any creditors or equity security holders held by Debtor, the Reorganized Debtor or any creditors of Debtor;

     8. Entering any order required to enforce the rights and powers of the Reorganized Debtor;

     9. Determining any claim entitled to priority under §507 of the Bankruptcy Code;

     10. Entering any order required to close Debtor's case;

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

      11. Determining all matters relating to the assumption, assignment, or rejection of executory contracts and unexpired leases, including claims for damages from the rejection of any executory contract or unexpired lease within such time as the Bankruptcy Court may direct;

      12. The Bankruptcy Court may liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent, disputed, or unliquidated Claims;

      13. The Court may shorten or extend, for cause, the time fixed for doing any act or thing under the Plan, on such notice as the Bankruptcy Court shall determine to be appropriate;

      14. The Court may enter any order, including injunctions, necessary to enforce the title, rights, and powers of the Reorganized Debtor, and to impose such limitations, restrictions, terms and conditions on such title, rights, and powers as the Bankruptcy Court may deem appropriate; and

      15. The Court may determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## ARTICLE XV - (REQUEST FOR CONFIRMATION)

Debtor requests entry of an Order confirming the Plan pursuant to §1129 of the Bankruptcy Code.

## ARTICLE XVI - (MISCELLANEOUS)

      1. **Payment Dates.** Whenever any payment to be made under the Plan is due on a day other than a Business Day, such payment will instead be made, without interest for such delay, on the next Business Day.

      2. **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nebraska.

      3. **Severability**. In the event that any provision of the Plan is determined to be void or otherwise unenforceable following the Effective Date, then such provisions shall be severable from the Plan and shall in no way limit or affect the enforceability and operative effect of any and all other provisions hereof.

      4. **Computations.** Any calculation of days shall exclude the first date of such period, shall include the last date and, in the event the last date is not a Business Day, shall include the first next Business Day.

      5. **Courts of Competent Jurisdiction.** If the Bankruptcy Court abstain from exercising, or decline to exercise jurisdiction, or are otherwise without jurisdiction over any matter arising out of the Plan, such abstention or refusal shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matters.

      6. **Successors and Assigns.** The rights, duties, and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Person

In The Matter Of
Jennifer Lennemann
Case No. BK 24-40046
Ch. 11 Plan

      7. **Notices.** Except as otherwise herein provided, all notices required to be made in or under the Plan shall be in writing, and shall be mailed by United States mail:

      a)      If to Debtor, then to 2003 E 34th St, Kearney, NE 68847.

          (i)      with a copy to

          Patrick R. Turner
          Turner Legal Group, LLC
          139 S. 144th Street, #665
          Omaha, NE 68010

      b)      If to a Creditor, or holder of an Equity Interest, at the address set forth in Debtor's Schedules or on such Creditor's Proof of Claim.

      Any person may change the address at which he is to receive notices for the purpose of this Plan by sending written notice pursuant to this provision to the Person to be charged with knowledge of such change.

Respectfully submitted.

                                                        **Jennifer M. Lennemann, Debtor.**

                  By:      /s/ *Patrick R. Turner*
                             TURNER LEGAL GROUP, LLC
                             Patrick Turner (NE Bar No. 23461)
                             139 S. 144th Street, Suite 665
                             Omaha, Nebraska 68010
                             Telephone: (402) 690-3675
                             pturner@turnerlegalomaha.com